IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRY GARRETT                                                                                    PLAINTIFF


v.                                         CASE NO.          12-2025


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on May 19, 2009, alleging an onset date of December 22, 2008, due to plaintiff's Broken Ankle (T. 123). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on July 27, 2010[2]. Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] Note that Tr. 414-416, and 418-419 are missing from the transcript.

At the time of the administrative hearing, plaintiff was 40 years of age and possessed a 12th grade education. The Plaintiff had past relevant work ("PRW") experience as a cook and line worker. (T. 124). Also, it appears that at the time of the hearing the Plaintiff attorney raised the issue of the Plaintiff's IQ and requested a Consultive Examination on that issue. T. 417.

On March 11, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's osteoarthritis of the right ankle, chronic low back pain, obesity, somatization disorder vs. conversion disorder, borderline intellectual functioning/mild mental retardation and alcohol abuse did not meet or equal any Appendix 1 listing. T. 12. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional limitations. T. 13. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as lamp shade assembler, compact assembler, and shoe buckler and lacer. T. 19.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The Plaintiff contends that the ALJ erred at Step Three in failing to find that the Plaintiff met Listing 12.05c and that the ALJ failed to properly develop the record.

The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is made at step three of the

disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical equivalence" has been established. Id. § 416.926(e). An impairment is medically equivalent under the regulations if it is "at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a). If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled. Id. § 416.920(a)(4)(iii). *Carlson v. Astrue* 604 F.3d 589, 592 (C.A.8 (Iowa),2010).

The Plaintiff was examined by Dr. Patricia Walz on September 14, 2010 and was administered a WAIS-IV test and an MMPI-2. As a result of her test and examination Dr. Walz stated that the Plaintiff "demonstrated intellectual functioning in the extremely low to borderline level with a WAIS-IV Full Scale IQ of 67". (T. 411). No records were sent to Dr. Walz to review (T. 407) but the Plaintiff stated to Dr. Walz that she thought she did "pretty well" in school and that she could read "pretty well". That she could read all the words in the newspaper and fill out job applications. (T. 407). The Plaintiff testified, however, that she was all special education classes and that she had a cumulative grade point of 1.2 (See T. 160) but she testified she did not know what that meant. (T. 433). She could not fill out a job application and could not read a newspaper. She could not read street signs but learned to recognized the shape and color. She could never pass her written driving test and had to take an oral test six or seven times. (T. 434). Dr. Walz found that the Plaintiff had impairments in "academic and social skills" which qualified her for a diagnosis of Mild Mental Retardation. (T. 411). The court notes that the DSM-IV states that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning". (DSM-IV, p. 42).

The regulations define mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" before age 22.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. *Muncy v. Apfel*  247 F.3d 728, 734 (C.A.8 (Mo.),2001)

The regulation further state that  "The required level of severity for this disorder is met when the requirements in A, B, C, **or** D are satisfied.

>    **A**. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR
>    **B**. A valid verbal, performance, or full scale IQ of 59 or less;

OR
>    **C**. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR
>    **D**. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.
>      See 20 CFR Part 404, Subpart P, Appendix 1

The ALJ classified the Plaintiff's mental impairment as Borderline Intellectual Functioning/Mild Mental Retardation. (T. 11). There is no explanation in the ALJ's opinion concerning how the determination of BIF was obtained or why it is even in his determination of the Plaintiff's severe impairments but the evidence is clear that the Plaintiff was diagnosed with Mild Mental Retardation.  The ALJ makes several references to 12.05 D and finding that the

Plaintiff did not have two Marked Limitations in the areas of Activities of Daily Living, Social Functioning, or Concentration, Persistence, or Pace. (T. 13)  The ALJ then stated that "the requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon other for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded.  In this case, the claimant has not allege limitations in this area, nor does the evidence of record establish such limitations.  Accordingly, as the paragraph A requirements are not met, there is no need to discuss the requirements in paragraph B of the listing."  (T. 13).  This language is a reference to Subparagraph A of 12.05 but it is unclear why the ALJ stated that he had no need to discuss Subparagraph B which provides that the required level of severity is met when the claimant has a "valid verbal, performance, or full scale IQ of 59 or less".  There is absolutely no evidence int the record that the claimant's IQ was at such a level but the evidence clearly established an IQ of 67. The ALJ discussed 12.05 A and 12.05 D and mentions 12.05 B but he is completely silent on 12.05 C which is precisely the subpart in issue.

      Section 12.05 C provides that mental retardation is sufficiently severe to constitute a listed disability when the claimant has: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). A  physical or other mental impairment is sufficient to satisfy the second part of this test when such impairment "has a 'more than slight or minimal' effect on [the claimant's] ability to perform work." *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir.1997) (*quoting Cook v. Bowen*, 797 F.2d 687, 690 (8th Cir.1986)).

It is clear that the ALJ did not even consider the listing requirements for 12.05 C. Since the Plaintiff had a valid full scale IQ of 67 the ALJ was then required to consider whether she had a physical or other mental impairment which imposed an "additional and significant work-related limitation or function".

Such an analysis was never conducted although the ALJ found her right ankle status post fracture and multiple surgeries, chronic low back pain, obesity, somatization disorder/conversion disorder and alcohol abuse to all be severe. (T. 11).  It is difficult to imagine that, singly or in combination, these disorders would not have additional and significant work-related limitation or function and how their limitations would not imposed different limitations than her limitations imposed by her Mild Mental Retardation.

The court believes that remand is necessary to allow the ALJ to evaluate the Plaintiff's claim under 12.05 C and to adequately explain why the Plaintiff's additional sever impairments do not constitute additional work related limitations.

## IV. Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this May 30, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE